IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MITZI E. DAILEY,                    :

    Plaintiff,                    :

v.                                 :    Civil Action No. GLR-15-2527

JACOB J. LEW, et al.               :

    Defendants.                   :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Leonard Getz's Motion to Dismiss (ECF No. 15) and Defendant Secretary of the United States Department of the Treasury ("Treasury") Jacob J. Lew's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment[1] (ECF No. 24). Also pending are pro se Plaintiff Mitzi E. Dailey's Motion for Extension of Time to Serve Process on Defendants[2] (ECF No. 23), Motion for Preliminary Injunction (ECF No. 30), and Motion for a Temporary Restraining Order and

---

[1] Under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2012), civil actions against federal employers must be brought against "the head of the department, agency, or unit, as appropriate." § 2000e-16(c); accord Gardner v. Gartman, 880 F.2d 797, 799 (4th Cir. 1989) ("[T]he head of the department for which the plaintiff works is the proper defendant in a sex or race discrimination suit"). "Title VII prohibits a plaintiff from filing an employment discrimination claim against an individual federal employee." Stoyanov v. Mabus, 126 F.Supp.3d 531, 540 (D.Md. 2015) (quoting Stoyanov v. Mabus, No. CCB-06-2968, 2010 WL 4918700, at *4 (D.Md. Nov. 24, 2010)). As head of Treasury, Lew is the only proper government defendant for Dailey's Title VII claims. Accordingly, the Court will grant the Motion to Dismiss (ECF No. 24) as to the nine IRS Appeals Office employees named in Dailey's Complaint, leaving Lew as the sole remaining government defendant.

[2] Because counsel have entered their appearance on behalf of all Defendants, the Court will deny this Motion as moot.

Preliminary Injunction (ECF No. 31).[3]   The Court, having reviewed the Motions and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014).   For the reasons outlined below, the Court will grant Getz's and Lew's Motions and deny Dailey's Motions.

## I.   BACKGROUND[4]

Dailey is an Internal Revenue Service ("IRS") Appeals Officer in IRS's Baltimore Office of Appeals, a National Treasury Employees Union ("NTEU") Local 90 member, and an attorney licensed in Maryland.   Dailey has been employed by the IRS Appeals Office since 2007.   She is the only African-American female employee in the Baltimore Appeals Office.   Getz is an IRS Appeals employee, President of NTEU Local 90, and Dailey's union representative.

On or about December 13, 2013, Dailey filed an appeal with the United States Equal Opportunity Employment Commission ("EEOC")[5] regarding an admonishment letter she received for complaining to upper level management about her supervisor invading her privacy. Dailey asserts that since filing the EEOC appeal, the IRS Appeals

---

[3] Also pending before the Court are Dailey's two Motions for Entry of Default Final Judgment: one as to Defendant Lawrence W. Ford (ECF No. 34) and the other as to Defendant Milissa K. Riggs (ECF No. 35).   Because the Court will grant Lew's motion to dismiss the IRS Appeals Office employees, thereby terminating Ford and Riggs as Defendants, the Court will deny Dailey's Motions.

[4] The Court has taken the facts from Dailey's Complaint and its exhibits.   The Court assumes the truth of these facts for purposes of resolving Lew's Motion to Dismiss.

[5] Dailey does not state when she filed her initial charge with the EEOC.

Office management has subjected her to "the most severe, harsh, and outrageous acts of retaliation." (Compl. ¶ 22, ECF No. 1). Dailey also alleges the NTEU "president and/or its representatives" owed her a duty of fair representation, but "refused and repeatedly denied" her representation and allowed these acts of retaliation to continue. (Id. ¶ 45). Dailey does not assert any specific allegations against Getz.

The alleged retaliatory conduct perpetrated by the IRS Appeals Office management began in February 2014 when Dailey's performance rating was lowered from 4.8 to 4.6 (on a 5.0 scale). Then, on November 7, 2014, Dailey's supervisor, Glen Polser, suspended her Telework Arrangement, effective November 15, 2014, due to Dailey failing to communicate with him, failing to provide her work schedule, and disabling the Office Communicator Server. On December 1, 2014, Dailey filed a grievance with the IRS Appeals Office management, requesting reconsideration of her removal from telework. On December 10, 2014, while her grievance was still pending, Dailey filed a request for a new Telework Arrangement with her new supervisor, Defendant Larry Ford. Ford denied Dailey's request because of her pending grievance. Also in December 2014, Dailey's performance rating was lowered again, this time from 4.6 to 4.2.

On January 13, 2015, Defendant Director of IRS Appeals Operations East, Scott Reisher, issued a memorandum addressing

Dailey's telework grievance.[6]  In the memorandum, Reisher proposed reinstatement of a Frequent Telework Arrangement conditioned upon Dailey maintaining acceptable communication with her manager and providing "evidence of [her] withdrawal of [her] EEO complaint/case no later than January 21, 2015." (Compl. Ex. 6, ECF No. 1-7). Dailey does not state whether she accepted Reisher's proposal.

On April 2, 2015, Ford denied another request from Dailey for a Telework Arrangement.[7]  In his response to Dailey, Ford cited Article 50, Section 2K of NTEU 2012 National Agreement II, which permits a supervisor to "temporarily suspend, modify or terminate a Telework arrangement" for specific reasons, including failure to communicate with managers. (Compl. Ex. 9, ECF No. 1-11).  Ford identified instances in which Dailey failed to communicate with him, including not timely responding to action items and not responding to two electronic calendar invitations to discuss Dailey's telework request. (Id.)  During this timeframe, on or about February 11, 2015, Dailey alleges Ford conducted a "search and seizure" of her case files and then issued managerial directives and an admonishment letter addressing Dailey's failure

---

[6] Dailey correctly notes that the year on Reisher's memorandum, dated January 13, 2014, is incorrect.
[7] Dailey also alleges she was wrongfully denied the ability to telework during the civil unrest in Baltimore in April 2015. Dailey does not, however, provide specific dates on which she was denied the ability to telework or the circumstances surrounding the denials.

to make her files available and refusal to meet with him.[8]   (Compl. ¶ 34).

Dailey further asserts that since December 2014, Ford and "upper levels of Appeals Management" have wrongfully imposed Leave Without Pay ("LWOP") or Away Without Leave ("AWOL").   (Id. ¶ 40). Dailey alleges that her supervisors improperly charged her with AWOL hours on five specific dates in March and August 2015.   On May 27, 2015, Ford issued Dailey a Leave Counseling Memo, which notified Dailey that she had used all of her advanced annual leave for the year, and, as such, Ford would charge her AWOL hours if she did not request LWOP.   On June 25, 2015, Ford issued Dailey a Leave Restriction Memorandum, notifying her that her sick leave balance was negative 164.5 hours and her annual leave balance was negative 83.5 hours.   (Compl. Ex. 11, at 2, ECF No. 1-13).   The Leave Restriction Memorandum also set forth the conditions under which her requests for leave would be approved for the next six months.

On August 26, 2015, Dailey filed her Complaint alleging employment discrimination based on her race and sex (Count I[9]) and retaliation (Counts II through XII) in violation of Title VII. (ECF No. 1).   In Counts II through XII, Dailey also includes claims

---

[8] Dailey does not state when the managerial directives or admonishment letter were issued.

[9] Dailey uses the term "Claim," which the Court will construe as a Count.   Also, Dailey does not number her discrimination claim or her third retaliation claim.   The Court will consider Dailey's discrimination claim as Count I and sequentially number her successive claims.

for breach of the duty of fair representation.[10]   (Id.).   On November 30, 2015, Getz filed a Motion to Dismiss for lack of subject-matter jurisdiction. (ECF No. 15).   Dailey filed an Opposition[11] to Getz's Motion on December 17, 2015 (ECF No. 21), to which Getz filed a Reply on December 31, 2015 (ECF No. 25).   On December 23, 2015, Lew filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 24).   Dailey filed an

---

[10] At the end of her Complaint, Dailey presents an entirely unadorned laundry list of additional claims, including: "American[s] with Disability Act," "Family Medical Leave Act," "Reasonable Accommodations," "Privacy Laws," "First Amendment," "Fourteenth Amendment," and "Contractual violations." (Compl. ¶¶ 59-65).   Because Dailey fails to provide any factual support for these claims, the Court will dismiss them. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n.10 (4th Cir. 2006) ("Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it." (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990))).

[11] In her Opposition to Getz's Motion to Dismiss, Dailey advances for the first time her Title VII claims against Getz, and requests leave to amend her Complaint accordingly. (Pl.'s Opp'n to Def.'s Getz Mot. to Dismiss 7, ECF No. 21).   Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within twenty-one days after service of a motion under Rule 12(b).   Because Dailey did not meet this deadline, the Court may grant her leave to amend her Complaint if "justice so requires."   Fed.R.Civ.P. 15(a)(2).   The Court should deny leave to amend when the amendment would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).   Futility is apparent when an amended complaint could not survive a motion to dismiss. Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995) (first citing Glick v. Koenig, 766 F.2d 265, 268-69 (7th Cir. 1985); then citing 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1487 n.26 (2d ed. 1990)).

As previously established, out of all Defendants that Dailey names, Lew is the only proper Defendant for Dailey's Title VII claims.   42 U.S.C. § 2000e-16(c); see supra note 1.   The Court, therefore, concludes that granting leave to amend would be futile and will deny Dailey's request.

Opposition to Lew's Motion on January 11, 2016 (ECF No. 26) to which Lew filed a Reply on February 11, 2016 (ECF No. 32).

## II.   DISCUSSION

### A.   Getz's Motion to Dismiss

#### 1.   Standard of Review

Rule 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction.   While the plaintiff bears the burden of proving the court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should only be granted if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Ferdinand-Davenport v. Children's Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) (quoting Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999)).   The pleadings should be regarded as "mere evidence on the issue," and courts "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans, 166 F.3d at 647 (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.[12] Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722

---

[12] It should be noted, however, that Dailey is an attorney licensed to practice law in Maryland.

(4th Cir. 2010).  "Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts which set forth a claim cognizable in a federal district court."  Deabreu v. Novastar Home Mortg., Inc., No. DKC 11-3692, 2012 WL 2000689, at *2 (D.Md. June 4, 2012) (citing Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990)).

### 2.  Analysis

Getz argues the Court lacks subject-matter jurisdiction over Dailey's claims for breach of the duty of fair representation because the Federal Labor Relations Authority ("FLRA") has exclusive jurisdiction over those claims.  Because Dailey is a union member in the federal, rather than private, sector, Title VII of the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7101 et seq. (2012), governs her claims.  Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263, 489 U.S. 527, 531 (1989).  Title VII of the CSRA does not permit federal employees to sue their unions in federal court for breach of the duty of fair representation.  Id. at 533, 536.  Rather, the FLRA has exclusive enforcement authority over this duty.  Id. at 533.  Thus, the Court concludes that it lacks subject-matter jurisdiction over Dailey's claims for breach of the duty of fair representation and will grant Getz's Motion.

**B.**   **Lew's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment**

**1.**   **Standard of Review**

Lew styles his Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom., Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty., Md., 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004 & 2012 Supp.)). Because the Court will not consider the extra-pleading material Lew presents in support of his Motion, the Court will construe the Motion as a Rule 12(b)(6) motion to dismiss.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding

9

the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the

complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  The court need not accept, however, unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

As stated above, pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.[13]  Erickson, 551 U.S. at 94 (citing Estelle, 429 U.S. at 106); Brown, 612 F.3d at 722.  But, "even a pro se complaint must be dismissed if it does not allege 'a plausible claim for relief.'"  Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (quoting Iqbal, 556 U.S. at 679).

   2.  **Analysis**

      a.  **Title VII**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

---

[13] As stated previously, Dailey is an attorney.  As a result, the less stringent standard may not be applicable.  Because Dailey is self-represented, the Court will nevertheless apply the less

11

religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Title VII also makes it unlawful "to discriminate against any

individual . . . because he has opposed any practice made an

unlawful employment practice by [Title VII], or because he has made

a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under [Title VII]."

Id. § 2000e-3(a).

Dailey raises Title VII claims for retaliation and race and

sex discrimination.  To prove these claims, Dailey may rely on the

burden shifting framework outlined in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973).  See Lightner v. City of Wilmington,

N.C., 545 F.3d 260, 264-65 (4th Cir. 2008) (applying framework to

race and sex discrimination claims); Foster v. Univ. of Md.-E.

Shore, 787 F.3d 243, 250 (4th Cir. 2015) (applying framework to

retaliation claim).  Under this framework, the plaintiff must carry

the initial burden of establishing a prima facie case of

discrimination or retaliation.  McDonnell Douglas, 411 U.S. at 798.

To survive a motion to dismiss, however, a plaintiff need not

establish a prima facie case.  Swierkiewicz v. Sorema N.A., 534

U.S. 506, 510-11 (2002) (concluding that "the prima facie case . .

. is an evidentiary standard, not a pleading requirement.").

Complaints in employment discrimination cases, therefore, "must

satisfy only the simple requirements of Rule 8(a)."  Id. at 513.

---

stringent standard.

Nonetheless, a plaintiff must plead facts sufficient to state each element of the asserted claim, Bass v. E.I. Dupont De Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), and "raise a right to relief above the speculative level," Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555), aff'd sub nom., Coleman v. Ct. of Appeals of Md., 132 S.Ct. 1327 (2012).

### i.  Retaliation

"To state a claim for retaliation under Title VII, a plaintiff must allege (1) 'that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events.'" Cobb v. Towson Univ., No. ELH-14-02090, 2015 WL 7878500, at *9 (quoting Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc)).  Lew argues that Dailey fails to allege a single adverse employment action.  "An adverse employment action is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'"  Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)).  "In retaliation cases, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.'" <u>Jensen-Graf v. Chesapeake Emp'rs.' Ins. Co.</u>, 616 F.App'x 596, 598 (4th Cir. 2015) (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)).

Dailey alleges that her supervisors retaliated against her for filing an EEOC appeal on December 13, 2013 when they took six types of employment actions against her.  The Court will review these actions in turn.

First, Dailey alleges that her supervisors lowered her performance evaluations in February and November 2014.[14] "[N]egative performance evaluation[s] alone, without any accompanying injury or change in the terms or conditions of employment, [are] insufficient to constitute a materially adverse employment action." <u>Altman v. McHugh</u>, No. 5:11CV00061, 2012 WL 1190271, at *17 (W.D.Va. Apr. 9, 2012), <u>aff'd</u>, 478 F.App'x 762 (4th Cir. 2012); <u>see</u> <u>Fernandez v. Alexander</u>, No. JFM-04-3009, 2007 WL 2475870, at *1 (D.Md. Aug. 27, 2007) (concluding that "performance evaluations that were quite good (but not as good as plaintiff wanted)" were not materially adverse employment actions), <u>aff'd sub</u>

_____

[14] Dailey also contends that as a result of her lowered evaluation score, she was passed over for a Grade 14 Appeals Officer position.  (Mem. of Law in Supp. of Pl.'s Opp'n to Defs.' Mot. to Dismiss or in the Alternative for Summ. J. Ex. 1 at 8, ECF No. 26-1).  The Court notes that Dailey raises these allegations for the first time in her Opposition memorandum.  A plaintiff "is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint." <u>Zachair, Ltd. v. Driggs</u>, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), <u>aff'd</u>, 141 F.3d 1162 (4th Cir. 1998).  Thus, Dailey's attempt to allege new facts in her Opposition is improper, and the Court need not

<u>nom.</u>, <u>Fernandez v. Hayden</u>, 307 F.App'x 725 (4th Cir. 2009). Because Dailey fails to allege an accompanying injury or change in the terms or conditions of employment, the lowering of her performance evaluations are not materially adverse employment actions. Thus, the Court concludes that Dailey fails to state a retaliation claim related to her lowered performance evaluations.

Second, Dailey alleges that her supervisors restricted her leave in May and June 2015 when they issued her Leave Counseling and Restriction Memos. Other district courts have held that placing an employee on leave restriction is not a materially adverse employment action. <u>E.g.</u>, <u>Douglas-Slade v. LaHood</u>, 793 F.Supp.2d 82, 91, 98 (D.D.C. 2011) (finding leave restriction memo not a materially adverse employment action when memo required employee, for the term of a year, to (1) "request and obtain approval for scheduled annual and sick leave at least two days in advance; (2) personally contact [her supervisor] or her designee within one hour after the start of her work day in cases of emergency when leave cannot be scheduled in advance; and (3) submit a medical certificate for all unscheduled sick leave" and "[f]ailure to abide by these conditions would 'result in [plaintiff] being charged Absence Without Leave (AWOL)'"); <u>Pannell v. Nicholson</u>, No. 7:06CV00088, 2008 WL 565098, at *5 (W.D.Va. Feb. 29, 2008) (concluding that placing employee on leave restriction

---

consider them.

requiring the employee to "produce medical documentation in order to take sick leave" and "request annual, paid leave in advance" or "face disciplinary action if [the employee's] pattern of absences continued" was not a materially adverse employment action).

Here, the May 27, 2015 Leave Counseling Memo merely notified Dailey that because she had used all of her available advanced annual leave, she would have to request LWOP instead of advanced annual leave in the future. Additionally, the June 25, 2015 Leave Restriction Memo required Dailey to, among other things: submit a letter from a healthcare provider on days when she was absent due to illness and a written explanation of absences in cases of emergencies; request annual leave or leave without pay in advance in writing; and report to her manager within two hours of the first day of unanticipated illness. Both memos cautioned Dailey that she would be charged AWOL if she did not "request the use of LWOP in writing and have it approved." (Compl. Ex. 11, ECF No. 1-13). These requirements for requesting leave were in place for only six months from the date of Dailey's receipt of the Leave Restriction Memo. The leave restrictions in Douglas-Slade and Pannell were similar to, if not more severe than, the restrictions imposed on Dailey. Moreover, Dailey does not allege that the leave restrictions resulted in a change in the terms, conditions, or benefits of her employment or that they would dissuade a reasonable employee from filing a charge of discrimination. Thus, the Court

16

concludes that Dailey fails to state a retaliation claim related to the leave restrictions.

Third, Dailey avers that her supervisors suspended her Frequent Telework Arrangement and denied her December 2014 and April 2015 requests for a new telework arrangement.[15] The parties cite no cases, and the Court finds none, addressing whether the suspension of a telework arrangement is a materially adverse employment action.  Limiting or terminating an alternative work schedule ("AWS"), however, is not a materially adverse employment action unless there is a "significant modification in work schedule."  Nasis-Parsons v. Wayne, No. 4;05CV36, 2006 WL 1555913, at *8 (E.D.Va. June 1, 2006), aff'd sub nom., Parsons v. Wynne, 221 F.App'x 197 (4th Cir. 2007).

In Wayne, the plaintiff alleged that her "maxiflex" AWS was terminated and her attempt to return to maxiflex was denied in retaliation for filing an EEOC charge.  Id. at *2, *4.  She further alleged that as a result of not being returned to the maxiflex work schedule, she had to use extra sick leave.  Id. at *4.  The

---

[15] Dailey also asserts that she was wrongfully denied the ability to telework during civil unrest in Baltimore, but does not provide any facts in support of this allegation.  "[A] number of courts have held that the denial of a request to work from home is not, in and of itself, an actionable adverse action."  Byrd v. Vilsack, 931 F.Supp.2d 27, 41 (D.D.C. 2013) (collecting cases).  "[T]he denial of an employee's request to work from home on a few occasions, without more, does not constitute an adverse employment action under Title VII . . . retaliation claims."  Id.  Thus, because the denial of a telework request is not a materially

maxiflex work schedule permitted flexible reporting and departure times, but employees were still required to work eighty hours per two-week pay period.  Id. at *7.  AWS did "not alter the total number of hours required of the employee, the employee's salary, nor the employee's position or responsibilities."  Id. at *8. Employee participation in AWS was also at the discretion of the employer.  Id.  The Wayne court, therefore, concluded that denial of maxiflex AWS was not an adverse employment action.  Id.

Here, Dailey has not alleged that Ford's suspension of her telework arrangement and denials of her subsequent requests for reinstatement altered her salary, the number of hours she is required to work, or her position or responsibilities.  Further, like the AWS in Wayne, telework agreements are at the discretion of IRS management because the NTEU National Agreement II permits supervisors to "temporarily suspend, modify or terminate a Telework arrangement" for specific reasons, including failure to communicate with managers.  (Compl. Ex. 9, ECF No. 1-11).  The suspension and denials of telework, therefore, do not constitute adverse employment actions.[16]  Consequently, the Court finds that Dailey

_____

adverse employment action, the Court concludes that Dailey fails to state a claim as to the denial of her telework request.

[16] Dailey also fails to allege a causal link between her December 2013 EEOC appeal and the suspension and denials of a new telework arrangement.  First, Dailey fails to allege that but-for engaging in protected conduct, her telework arrangement would not have been suspended.  Next, Dailey's allegations do not support a reasonable inference of causation through temporal proximity.  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653,

fails to state a retaliation claim related to the suspension and denials of telework.

Fourth, Dailey avers that Reisher conditioned reinstatement of her telework arrangement on withdrawal of her EEOC appeal.  The parties cite no cases, and the Court finds none, directly addressing whether reinstatement of telework conditioned upon withdrawal of an EEOC charge constitutes an adverse employment action.  Courts have, however, found no adverse employment action when an employer conditioned the receipt of an unearned benefit upon signing either a waiver of rights under employment discrimination laws or withdrawal of an EEOC charge, or both.  See E.E.O.C. v. Allstate Ins. Co., 778 F.3d 444, 452 (3d Cir. 2015) (waiver), as amended on reh'g in part, (Mar. 26, 2015); Douglass v. Rochester City Sch. Dist., 522 F.App'x 5, 9 (2d Cir. 2013) (waiver and withdrawal of EEOC charge).  Federal regulations also expressly allow for the voluntary settlement of discrimination complaints between federal agencies and their employees.  29 C.F.R. § 1614.603 (2016).

---

657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two.").  Dailey filed her appeal eleven months before her telework arrangement was suspended, and the two denials of Dailey's request for a new telework arrangement occurred twelve and sixteen months later, respectively.  Pepper v. Precision Valve Corp., 526 F.App'x 335, 337 (4th Cir. 2013) (holding that ten-month gap is insufficient to establish temporal proximity); Hall v. Greystar Mgmt. Servs., L.P., No. 14-2145, 2016 WL 241377, at *5 (4th Cir. Jan. 21, 2016) (same).

Here, Lew argues that there is no guaranteed right to telework and telework agreements are at the discretion of Treasury based on the satisfaction of certain criteria. As discussed previously, IRS employee telework agreements may be suspended, modified, or terminated at the discretion of the employee's supervisor. (See Compl. Ex. 9, ECF No. 1-11). In addition, Dailey's supervisor did not request that she waive her rights to bring EEOC charges or employment discrimination claims—conduct that courts have found is not an adverse employment action—but only requested that she withdraw an existing EEOC appeal. Thus, the Court concludes that Dailey fails to state a retaliation claim related to reinstatement of her telework arrangement conditioned upon the withdrawal of her EEOC appeal.

Fifth, Dailey alleges three separated instances in which she was either wrongfully denied leave or improperly charged leave: (1) on March 3, 2015, her request for advanced leave was wrongfully denied, and then she was charged eight AWOL hours when she did not report to work; (2) on an unspecified date, she was wrongfully charged thirty-two AWOL hours; and (3) on August 11, 17, 18, and 20, 2015, she was wrongfully charged forty AWOL hours. "[C]onsidering [an] employee AWOL" does not "constitute[] an adverse employment action in a retaliation claim." Wonasue v. Univ. of Md. Alumni Ass'n, 984 F.Supp.2d 480, 492 (D.Md. 2013) (quoting Rock v. McHugh, 819 F.Supp.2d 456, 470–71 (D.Md. 2011));

see also Byrd, 931 F.Supp.2d at 41 (finding no materially adverse
employment action when employee who "was charged as 'AWOL' and was
docked 7.75 hours of pay for her absence" after a request for and
denial of the ability to work from home for the day).  Thus, the
Court finds that Dailey fails to state a retaliation claim related
to the charging of AWOL hours.

Sixth, Dailey alleges that Ford issued her an admonishment
letter and managerial directives related to a case file review.
Dailey states that Ford "falsely accused" her of "not making all
case files available to him, then used that premise to issue . . .
Managerial Directives and a disciplinary Admonishment Letter."
(Compl. ¶¶ 35).  Besides making conclusory statements about the
"hostile, aggressive actions" of her manager, Dailey does not state
any facts from which the Court could reasonably infer that the
admonishment letter or the managerial directives affected the terms
and conditions of her employment.  (Id.).  Thus, the Court finds
that Dailey fails to state a retaliation claim related to the
admonishment letter and managerial directives.

In short, Dailey's numerous allegations of retaliation are
best characterized as "instances where [she] disagreed with the
management style or decisions of those who supervised [her]—and
that alone is not actionable under Title VII."  Thorn v. Sebelius,
766 F.Supp.2d 585, 601 (D.Md. 2011), aff'd, 465 F.App'x 274 (4th
Cir. 2012).  Dailey has not alleged a single materially adverse

employment action.  Accordingly, the Court will grant Lew's Motion as to Dailey's retaliation claims.

### ii.  Race and Sex Discrimination

Lew also contends Dailey's allegations are insufficient to state a claim for race and sex discrimination.  "To state a claim for discrimination under Title VII, a plaintiff must allege: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'"  Cobb, 2015 WL 7878500, at *8 (quoting Coleman, 626 F.3d at 190).  Dailey must also allege that she was treated less favorably "because of" her race or sex.  See 42 U.S.C. § 2000e-2(a).

Dailey sufficiently alleges the first and second elements of a discrimination claim—she states she is an African-American female and has always received high marks on her performance evaluations.  Dailey fails, however, to sufficiently allege the third and fourth elements of a discrimination claim.  She states that her supervisors discriminated against her by issuing her an admonishment letter, but, as explained above, this is not an adverse employment action.  Dailey does not allege that similarly-situated IRS employees outside her protected classes were treated more favorably.  Moreover, Dailey does not allege that she was treated less favorably because of her race or sex.  Rather, Dailey states in a completely conclusory manner that her supervisors

discriminated against her "on the basis of" her race and sex. (Compl. ¶ 21). Thus, the Court concludes that Dailey fails to state a claim for discrimination and will grant Lew's Motion as to Count I.

**C.   Dailey's Motions for Preliminary Injunction and Temporary Restraining Order**

Dailey contends that she has suffered irreparable financial injury because her supervisor has wrongfully charged her with AWOL on several occasions, which resulted in lost wages, and wrongfully suspended and denied reinstatement of her telework arrangement. To prevail on a request for a preliminary injunction, the moving party "must establish [1] that [she] is likely to succeed on the merits, [2] that [she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is in the public interest." Centro Tepeyac v. Montgomery Cty., 722 F.3d 184, 188 (4th Cir. 2013) (quoting Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008)). "[P]reliminary injunctions are 'extraordinary remed[ies] involving the exercise of very far-reaching power.'" Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013) (quoting Direx Isr., Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992)).

Because Dailey fails to state claims for Title VII violations, the Court concludes she is not likely to succeed on the merits against Lew. Additionally, assuming Dailey were likely to succeed

on the merits, the harms she alleges do not rise to irreparable injury.  Sampson v. Murray, 415 U.S. 61, 91-92 (1974) (loss of income and damage to reputation as a result of being discharged from employment not sufficient to establish irreparable injury); see also Simmons v. Brown, 497 F.Supp. 173, 175-76 (D.Md. 1980) (discussing Sampson).  Accordingly, the Court will deny Dailey's Motions.[17]

### III. CONCLUSION

For the foregoing reasons, Getz's Motion to Dismiss (ECF No. 15) is GRANTED.  Lew's Motion to Dismiss (ECF No. 24) is GRANTED and Motion for Leave to File Surreply (ECF No. 38) is DENIED AS MOOT.  Dailey's Motion for Extension of Time to Serve Process on Defendants (ECF No. 23) is DENIED AS MOOT.  Dailey's Motion for Leave to Amend (ECF No. 21), Motion for Preliminary Injunction (ECF No. 30), Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 31), and Motions for Entry of Final Default Judgment (ECF Nos. 34, 35) are DENIED.  Dailey's Complaint (ECF No. 1) is DISMISSED.  A separate Order follows.

Entered this 18th day of April, 2016

/s/

_____
George L. Russell, III
United States District Judge

---

[17] Lew has also filed a Motion for Leave to File Surreply to Dailey's two motions for preliminary injunctive relief (ECF No. 38).  Because the Court denies Dailey's Motions, the Court will deny Lew's Motion as moot.